# HOWE v CITY OF CLEARWATER

Case No. 86-1830

State of Florida, Division of Administrative Hearings

October 1, 1986

## APPEARANCES OF COUNSEL

**Greg Howe** for petitioner.

**M. A. Galbraith, Jr.,** City Attorney, for respondent.

## OPINION

P. MICHAEL RUFF, Hearing Officer.

### FINAL ORDER

Pursuant to notice an appeal hearing was held before P. Michael Ruff, duly designated Hearing Officer, in accordance with Section 137.013 of the City of Clearwater's Land Development Code on June 18, 1986, in Clearwater, Florida. The issue for determination in this

appeal from the Development Code Adjustment Board concerns whether the Petitioner is entitled to a variance to allow a fence six feet in height within the structural setback area at 544 Plumosa Avenue, Nursery Park, Lot 4.

## FINDINGS OF FACT

The Petitioner and her husband own the property at 544 Plumosa Avenue in Clearwater. The Petitioner owns a large female Siberian Husky dog which they have, until recent times, kept on a lead line in the back yard of their residence at the above address. In recent months, after consulting a veterinarian, it was learned that the dog suffers from a spinal defect which is aggravated by the dog being tied to a leash or lead, which exerts a sidewise pull on the dog's spinal column. Accordingly, the veterinarian recommended that the dog be kept untied, but in a fenced back yard.

The Petitioner's home faces, and is addressed, on Plumosa Avenue with the back yard being bounded on one side by Turner Drive. They have a number of fruit trees and also propagate a number of rare and endangered plant species in their back yard in conjunction with their activities with a conservation organization dedicated to conserving and propagating rare plants of all types. The Howes have experienced difficulties with children and other persons entering their back yard to pick fruit, endangering the various plants they grow and disturbing their privacy. Ms. Howe wishes to follow the veterinarian's instruction for the health of their dog and keep her in a fenced back yard both for reasons of her own health and safety and to keep male dogs from having contact with her.

The Petitioner's corner lot and residence is located adjacent to an office complex with its parking lot and a retention pond which creates objectionable noise and undesirable views from their back yard. The office complex experiences a great deal of human traffic at all hours of the day and night with attendant noise, car lights, etc. The Petitioner thus sought a permit and variance to permit the construction of a six foot high wooden fence in the structural setback area approximately twenty feet from the pavement of the street. This is in an area in which the Land Development Code permits a fence of only four feet in heights. The four foot height would not safely confine the Petitioner's dog at those times when he back injury is not debilitating. If the Petitioner constructs a six foot fence without a variance they will be required under the zoning code to place the fence five feet further away from the street right-of-way and thus would lose 1,040 square feet of their back yard. The fence would then enclose only about half of the

**225**

Petitioner's back yard or 1,976 square feet. This would not be sufficient room for the dog, and the garden and fruit trees, all of which the Petitioner desires to protect behind a fence.

Even though the dog's medical problem might prevent her from escaping a four foot fence, healthy male dogs in the neighborhood would be able to jump over a four foot fence, which condition the Howes desire to avoid. Finally, the Petitioner wants the fence of this heights and configuration for privacy. The Petitioner's lot is a corner lot with no structures or screens on three sides. There are streets on two sides and the office complex with its parking lot and retention pond on the third side. A six foot fence would be necessary to give some degree of privacy to Petitioner's back yard.

Some months prior to the initial hearing in this matter, the Petitioner elected to build a fence after consulting with her veterinarian about the aggravation of the dog's back injury due to being confined on the end of a rope and after experiencing the above-mentioned trespass problems. The Petitioner went to the City of Clearwater Building Department to obtain a building permit and the question arose as to whether the house was properly addressed on Plumosa Avenue or rather whether it should have been addressed on Turner Street, along which the subject fence is located. If it were addressed on Turner Street, the fence could only be thirty inches high under the appropriate ordinance. Because of this question, the Petitioner was referred to the Planning and Engineering Department. Ultimately, it was determined that the Petitioner's home is properly addressed, but she would need a variance to build a fence on the Turner Street side of her property, the proposed site being approximately twenty feet from the City's street right-of-way and within the "structural setback zone" in which only a four foot fence is normally permitted.

The Petitioner was informed by the Planning and Engineering Department that it would take approximately two to three months to get a hearing on the request for a variance. The Petitioner reflected on this delay and, in the interest of their dog's health, she and her husband felt it necessary to proceed to erect the fence at the location desired and then to apply for the variance and the building permit "after-the-fact." The Petitioner proceeded to construct the fence six feet high, made of lumber. The fence was landscaped in an appropriate manner and in such a way as to harmonize with the fence on the adjoining parcel of property which the Howes' fence will align with. The fence and the landscaping in front of it on the adjoining lot is very similar to that erected by the Petitioner. The two aligned fences are the same distance from the street right-of-way. The fence is set back four

226

feet inside of the Petitioner's property line. During and after the erection of the fence, the Petitioner pursued her application and this appeal concerning her variance application and the application for a building permit for the fence.

Although eight of the Petitioner's neighbors supported her request for a variance and three of them testified in support of the erection of the fence at the hearing before the Board, the Board voted three to two to deny the application for variance from which this appeal resulted. The neighbors, two of whom testified in the instant hearing, support the erection of the Petitioner's fence. They feel that it is an improvement to the neighborhood and to the Petitioner's own property and they praised the Petitioner's concern for the appearance of their property and their renovation of it since they have owned it. The neighbors have no objection to the fence and feel that, as it is presently constructed and landscaped, it is a positive asset to the Petitioner's property and their neighborhood. They understand the fence was built without a permit, but also corroborated Petitioner's position in stating that the fence was built for a justifiable reason, the Petitioner's concern for her dog's health. The neighbors testifying have also observed the dog being teased and irritated by children and other pets when she is on a chain without a fence around the yard. When the dog is in an agitated state, she jerks on the end of the chain with a great deal of force which can further injure the dog's spine.

When Mr. Howe consulted with the Planning Department concerning the location of the fence and the question of the variance, he did not understand that he could build a six foot fence if he moved it five feet farther away from the street right-of-way. The present location of the fence and its landscaping, however, forms a continuous line with that of the neighboring fence. If the Petitioner moved the fence into her yard any farther it would be too close to the side of their house so that a gate would have to be placed in the middle of the fence facing the street. This would be less aesthetically pleasing than the present location of the gate, which is next to the house around the corner of the fence. Additionally, the Petitioner would give up 1,040 square feet of yard space in her back yard which, for the above reasons, would render their usable back yard area too small. Unlike other homes in the neighborhood, the Petitioner's need for privacy is somewhat more critical since theirs is a corner lot and since the unscreened back yard overlooks the parking lot of the office complex with a substantial number of people arriving and departing the parking lot during most of hours of the day and night. The fence is in harmony with the overall character of the neighborhood in view of the landscaping beautifying

227

the fence and because there are a significant number of similar fences in the immediate area, including that already mentioned adjoining the Petitioner's fence.

Finally, it is apparent that, although the Petitioner built the fence before she obtained the variance, that this action was not taken with any intent to willfully disregard the zoning code provision at issue, but rather because the Petitioner felt that she could not safely wait for completion of the public hearing process because of the dog's deteriorated health. While it is true the Petitioner built the fence without obtaining a variance, she did pursue the variance application concurrently with the construction of the fence, thus voluntarily informing the Board of the need for the fence and the accompanying variance.

## CONCLUSIONS OF LAW

Upon seeking a variance from the structural setback regulations pertaining to fences contained in the City of Clearwater's Land Development Code, [Section 136.016 (f)(3)], the applicant bears the burden of demonstrating that it meets the standards for approval for variances which are set forth in Section 137.012(d) of that Code. Briefly summarized, those standards which must be met are: a condition which is unique to the property in question and not created by the applicant; that the strict application of the Code provisions would result in an unnecessary hardship upon the applicant due to the physical surroundings of the property; that the variance requested is the minimum necessary to overcome that hardship; and that the granting of the variance will not be detrimental or injurious to other property, the appearance of the community or public health, safety or welfare and will not violate the general spirit and intent of the Land Development Code.

The Petitioner has sufficiently demonstrated that the conditions prevailing at the property at issue are sufficiently unique and that the Code's structural setback limitations with regard to fences are an unnecessary hardship in this instance. Ms. Howe has established that her property is a corer lot exposed to public view on three sides, especially with regard to the office complex to which it is adjacent. The adjacent parking lot for the office complex results in the Petitioner's back yard having substantially less privacy than other residences in the neighborhood, which condition Petitioner did not cause. The traffic caused by people who work at the office complex going to and from their offices day and night together with people who have business there exposes the Petitioner's back yard to substantial public scrutiny.

228

This condition is sufficiently unique compared to other residential properties in the neighborhood that, when balanced against the limited scope of the variance sought, that is, only a two foot addition to the permitted four foot fence, it supports the conclusion that the uniqueness criteria has been met.

In addition to the lack of privacy presently suffered by the Petitioner, the peculiar problem experienced by Ms. Howe's dog with its spinal disease or condition, coupled with the dog's ability and neighborhood dogs' abilities to jump a four foot fence constitutes a sufficient hardship so as to justify the erection of a six foot, pleasingly landscaped fence such as this at the location for which the Petitioner seeks the variance. In short, the Petitioner's need for privacy, the need to safely maintain her dog and the need to prevent trespassers from her back yard is a sufficient demonstration of hardship to establish that the Petitioner has met this criteria as well.

It was clearly demonstrated that the granting of the variance would not be detrimental to other residents and property owners in the neighborhood since a substantial number of those property owners and residents actively supported the granting of the variance for the fence. The neighbors feel that the fence is pleasingly landscaped and is an asset to the Petitioner's property and to the appearance of the neighborhood in general. They established that the Petitioner and her husband have constantly sought to renovate and upgrade the quality of their property. It is concluded that the variance sought by the Petitioner will violate neither the spirit nor the intent of the Code if the variance for a six foot fence at a location nineteen feet from the pavement of the street is granted. This request is a reasonable one and will not detract from the appearance of the community, the neighborhood, and meets the standards for variance approval set forth in Section 137.012(d) of the City's Land Development Code.

## FINAL ORDER

In consideration of the above Findings of Fact, Conclusions of Law, the evidence of record, and the candor and demeanor of the witnesses, it is ORDERED that Katherine Caffentzis Howe is GRANTED a variance from Section 136.016(f)(3) of the Land Development Code in order to install a six foot privacy fence, appropriately landscaped, within the structural setback area from the street right of way at the property addressed as 544 Plumosa Avenue, Nursery Park, Lot 4.

DONE and ORDERED this 1st day of October, 1986 in Tallahassee, Florida.